UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | No. 1:23-mj-04293 |
| | ) | |
| JACK DOUGLAS TEIXEIRA | ) | |

**MEMORANDUM IN SUPPORT OF RELEASE ON BEHALF OF JACK D. TEIXEIRA**

Airman First Class Jack Teixeira, by and through undersigned counsel, requests that this Court release him pursuant to the Bail Reform Act ("BRA"). *See* 18 U.S.C. § 3142. As grounds, Mr. Teixeira argues that he is entitled to release pursuant to the least restrictive conditions because he is not currently a "serious risk" of flight or obstruction. *See* 18 U.S.C. §§ 3142(b), (f)(2)(A)-(B); *see also United States v. Ploof*, 851 F.2d 7, 12 (1st Cir. 1988).

The government's supplemental motion for detention (ECF No 19) in many respects engages in hyperbolic judgements and provides little more than speculation that a foreign adversary will seduce Mr. Teixeira and orchestrate his clandestine escape from the United States. This argument is illusory. The government has presented no articulable facts to support these assertions. It also engages in selective reasoning to conclude that there is currently a risk of obstruction. Finally, the government's argument misconstrues the standard demanded by the BRA. The BRA requires only reasonable assurances, not the guarantees that the government appears to suggest. *See United States v. Xulum*, 84 F.3d 441, 443 (D.C. Cir. 1996) (per curiam) ("Section 3142 speaks only of conditions that will 'reasonably' assure appearance, not guarantee it").

If the Court finds that Mr. Teixeira currently poses a serious risk of flight or obstruction, he is still entitled to pretrial release because there are ample release conditions available to reasonably assure both his presence at trial and compliance with judicial procedures. Those

potential conditions include:[1] (1) release to Mr. Teixeira's father, Jack Teixeira Sr., as third-party custodian; (2) confinement to his residence unless in the presence of father, mother, step-father, Air Force personnel, or counsel; (3) location monitoring; (4) no access to the internet or possession of any internet capable device that is not password protected from access to the internet except under the supervision of father, Air Force personnel, or counsel;[2] (5) no direct or indirect contact with any witnesses or potential witnesses, or any member or former member of Mr. Teixeira's online communities; and (6) a bond in an amount of $20,000 or bond secured by either or both homes owned by Mr. Teixeira's parents. In addition to these available conditions, the Court can note that Mr. Teixeira is still currently an active-duty Airman First Class with the Air National Guard. Thus, Mr. Teixeira's military chain-of-command remains responsible for his wellbeing, and a Senior Master Sergeant has been designated to maintain regular contact with Mr. Teixeira. (*See e.g.* Exhibits 2, 3). This servicemember's mandatory responsibilities to Mr. Teixeira, discussed more fully below, further serve to sufficiently mitigate any risk of flight or obstruction that the Court may find.

## Overview

Mr. Teixeira is 21 years-old and a life-long resident of Massachusetts. He enlisted as a member of the armed services at age seventeen and is currently on active duty. At the time of his arrest, he served in the United States Air Force, 102nd Intelligence Wing of the Massachusetts Air National Guard, located at Otis Air National Guard Base. The base is only 40 miles from North Dighton, Massachusetts, where Mr. Teixeira has lived since birth (other than being stationed

---

[1] Mr. Teixeira offers these conditions as an example but nonetheless argues that he is entitled to the least restrictive set of conditions that the Court finds appropriate.

[2] For example, Mr. Teixeira Sr.'s smart TV will be disconnected from the Wi-Fi, which will be password protected by Mr. Teixeira Sr. to restrict access. Alternatively, Mr. Teixeira Sr. is willing to remove the television entirely.

2

outside of Massachusetts during basic training and tech school). At the time of his arrest on April 13, 2023, Mr. Teixeira lived with his mother and step-father–himself a veteran of the 102nd Intelligence Wing, who retired after a 34-years in the military.

Mr. Teixeira's mother and father divorced amicably when he was in early elementary school. The proposed release address is their former marital home. After the divorce, his mother moved to her own home nearby, where she continues to reside. Mr. Teixeira's parents continue to live 5 minutes apart and have done so throughout his life. The two co-parented Mr. Teixeira and his older sister without conflict until each turned 18. Mr. Teixeira attended local public schools and obtained a B average in high school. In 2016, Mr. Teixeira's mother began a relationship with Mr. Teixeira's now stepfather. His mother and stepfather married in 2017 and Mr. Teixeira lived predominantly at their residence since that time. The couple remain supportive and available to help supervise Mr. Teixeira while on pretrial release.

His family reports that from an early age, Mr. Teixeira was interested in military equipment and military history. During a portion of his youth, Mr. Teixeira accompanied his mother on trips where she and others assisted veterans. While on these trips, Mr. Teixeira met disabled service members in need of home construction or other help. This experience, combined with his stepfather's deep military experience, became part of Mr. Teixeira's own decision to join the armed forces.

Mr. Teixeira volunteered for the Air National Guard at age seventeen, in the fall of his last year of high school. He completed his basic training in 2020. For Mr. Teixeira, this rite of formation—of breaking down and building up recruits—took place during the unique tumult of the COVID-19 pandemic.[3] He is currently an Airman First Class serving active duty under Title

---

[3] *See* The American Homefront Project: "'We do Feel Kind of Robbed': COVID-19 Forces the Military to Scale Back Basic Training." Available at: https://americanhomefront.wunc.org/2021-01-05/we-do-feel-kind-of-robbed-covid-19-

3

10 of the United States Code and is classified as a Cyber Defense Operations Journeyman.

The government's allegations taken from the complaint affidavit state that from at least late 2022, and up and through the date of his arrest, Mr. Teixeira served as the administrator of a private social media server[4] dedicated to the discussion of geopolitical affairs and current and historical wars. (ECF No. 3-1, ¶¶ 15, 21). The government further alleges that Mr. Teixeira holds a top-secret security clearance through his service with the Air National Guard and that he used that clearance to obtain classified information and post it to the private social media server. (ECF No. 3-1, ¶¶ 24, 26). The government then alleges that a separate individual—described as "User 1"—published the material beyond the private social media server and that the documents were thereafter shared to various locations across the internet. (ECF No. 3-1 ¶ 26). Heavily armed law enforcement agents arrested Mr. Teixeira for gathering, transmitting, or losing defense information in violation of 18 U.S.C. § 793(b), (d), and for unauthorized removal and retention of classified documents or material in violation of 18 U.S.C. § 1924. Mr. Teixeira submitted to arrest without incident. (*See* Exhibit 1).

The government's allegations in its filings on the evening of April 26, 2023, offer no support that Mr. Teixeira currently, or ever, intended any information purportedly to the private social media server to be widely disseminated. Thus, its argument that Mr. Teixeira will continue to release information or destroy evidence if not detained rings hollow.

---

forces-the-military-to-scale-back-basic-training (Last accessed April 26, 2023) (Quoting Mark Cancian, Colonel, USMCR, ret., Senior Adviser with the Center for Strategic and International Studies (CSIS) International Security Program, "The kinds of things that they've had to cut out…are the military skills, the warrior skills that let people know that they are now in a very different kind of environment. It makes it a little harder for someone arriving at a unit to accept the sacrifices that might be entailed in service in the field…I would say that it makes the force a bit more fragile, and there is a bit more risk as it takes time for these new airmen to get acculturated.").

[4] The government describes the platform as "a VOIP and instant messaging social platform" in which users "have the ability to communicate with voice calls, video calls, text messaging, and can post media and files in private chats or as part of communities called 'servers.'" (ECF No. 3-1, ¶ 14 n.1).

The government moved for the Court to detain Mr. Teixeira on the grounds that he is currently a serious risk of both flight and obstruction of justice. However, for reasons discussed below, the Bail Reform Act ("BRA") requires that Mr. Teixeira be released because the government cannot prove that, as he stands before the court today, he is a "serious risk" of flight or obstruction as required by 18 U.S.C. § 3142(f)(2)(A)-(B). If the Court disagrees, there are still conditions available that in whole or in part are more than sufficient to mitigate any risk of flight or obstruction that the Court finds. Mr. Teixeira asks therefore that he be released subject to the least restrictive set of conditions proposed herein which the Court believes necessary to reasonably assure his appearance and compliance. Contrary to the government's contention, release of Mr. Teixeira is not based simply on his word. The Court has available these common judicially constructed conditions, but also the Court can note that as an active-duty Airman under Title 10 of the United States Code, Mr. Teixeira's chain of command remains responsible for his well-being. (*See* Exhibits 2, 3). Air Force policy and directives mandate that it take specific steps to ensure that Mr. Teixeira has the resources necessary to conform to any pretrial conditions the Court may impose. (*Id.*)

**Argument**

Mr. Teixeira is entitled to pretrial release because (1) he is currently not a serious risk of flight or obstruction and, in the alternative, (2) because there are release conditions available to assure Mr. Teixeira's presence at trial and compliance with court procedures. Mr. Teixeira will address each matter in turn.

I. **Mr. Teixeira cannot be detained for risk of flight or obstruction because there is no evidence demonstrating that he poses a serious risk of either.**

Under the BRA, the Court "shall order" pretrial release, subject to "the least restrictive … conditions" that "reasonably assure" the defendant's appearance in court, except in certain narrow

circumstances. *See* 18 U.S.C. §§ 3142(b)-(c). "Section 3142 speaks only of conditions that will 'reasonably' assure appearance, not guarantee it." *Xulum*, 84 F.3d at 443.

Where an individual is not charged in any of the circumstances described in 18 U.S.C. § 3142(f)(1), he or she may only be detained pretrial if they pose a "serious risk" of either flight or obstruction.[5] *See* 18 U.S.C. §§ 3142(f)(2)(A)-(B); *see also United States v. Ploof*, 851 F.2d at 12. The government bears the burden to establish that a defendant is a serious risk of flight or obstruction by a preponderance of the evidence. *See United States v. Mehenna*, 669 F.Supp.2d 160, 160 (D. Mass. 2009)(citations omitted). If the government fails to meet its burden, then Mr. Teixeira is entitled to release pursuant to the least restrictive conditions that the Court finds appropriate. *See Ploof*, 851 F.3d at 11 ("Congress did not intend to authorize preventive detention unless the judicial officer first finds that one of the § 3142(f) conditions for holding a detention hearing exists"); *see also United States v. Salgado*, CR No. 20-56JJM, 2020 WL 4747931, *4 (D. R.I. Aug. 17, 2020)(holding that the government must first "demonstrate a serious risk" under § 3142(f)(2) "before the Court can consider detention").

Based on the foregoing, Mr. Teixeira cannot be detained because the record before the Court fails to establish that he is currently a serious risk of flight or obstruction. Mr. Teixeira is 21-years old and has no prior criminal history. Both of Mr. Teixeira's parents have lived in North Dighton for more than thirty years. Mr. Teixeira has extended family in the area as well. Mr. Teixeira's employment history other than the Air National Guard includes a minimum wage job during high school. The Bail Report reflects that Mr. Teixeira has limited assets, and that his monthly salary as an Airman is only $3,898 per month, before expenses. Because of this

---

[5] The government did not–and cannot–move under § 3142(f)(1) as grounds for detention, thus Mr. Teixeira's risk of danger to the community is not reached in the first instance. *See United States v. Kukstis*, No. 4:18-mj-04174-DHH, ECF No 25, pg. 7-8 (holding that "[t]he government may move for detention on the ground of dangerousness only if the offense involves one of the circumstances set forth in 18 U.S.C. § 3142(f)(1)").

background, and for other reasons as outlined in the Bail Report, the probation department recommends that Mr. Teixeira be released to the third-party custody of his father under conditions. Accordingly, based on the record presented, and consistent with the considered recommendation of the probation department, the BRA demands that Mr. Teixeira be released subject to the least restrictive conditions because he poses no serious risk of flight or obstruction.

Beyond the exaggerated risk of a foreign government's rescue from North Dighton, the government speculates that Mr. Teixeira's modest income somehow incentivizes him to flee if released. It makes this claim without presenting any evidence showing that Mr. Teixeira ever sought to do so previously. Although the government frequently claims that economic means indicates a risk of flight, here it claims that Mr. Teixeira's lack of means also suggests he will flee. In the government's view, wealth and poverty alike pose a risk of flight.

Instead, there is direct evidence in the record demonstrating that Mr. Teixeira will remain compliant with judicial procedures and appear at any future court date, and that he has neither the intention nor the ability to flee or obstruct justice. Mr. Teixeira is a lifelong resident of Massachusetts and has substantial ties to this community. *See United States v. Say*, 233 F.Supp.2d 221, 226 (D. Mass. 2002) (holding that a defendant's "substantial ties to Worcester" prevented the court from "find[ing] by a preponderance of the evidence that he pose[d] a risk of flight"). The newly disclosed information from the government suggests that no disclosures occurred after March 19, 2023, prior to any public reporting on the alleged leaks. Additionally, the government's probable cause affidavit suggests that on the day the FBI arrested Mr. Teixeira, he was aware of the investigation and some reporting of the alleged leaks. (ECF No. 3-1, ¶ 27).

If the government's fears about Mr. Teixeira's intent to flee are to be believed, then he would have done so at the time he became aware of the public reports. Mr. Teixeira made no

attempt to flee, even after being publicly named as a suspect. Instead, he sat on his mother's porch reading a bible in his uniform-compliant undershirt, awaiting the arrival of law enforcement. When multiple agents arrived in his mother's driveway in armored vehicles and gave commands over a loudspeaker, Mr. Teixeira obeyed, and agents arrested him without incident. This presence and compliance, despite the overt incentive to flee, is direct evidence that he poses no legitimate risk for non-appearance and non-compliance with court procedures. (*See* Exhibit 1).



(*images captured from* WCVB news article, located at https://www.wcvb.com/article/massachusetts-air-national-guard-jack-teixeira-classified-document-leak-ukraine-war/43591707)

Considering such evidence, the BRA mandates that Mr. Teixeira be released pursuant to the least restrictive means available to the Court because there is no evidence to suggest that Mr. Teixeira is currently a serious risk of flight or obstruction.

II.  **In the alternative, the detention factors favor Mr. Teixeira's release.**

If the Court finds that Mr. Teixeira is a serious risk of flight or obstruction, he is still entitled to release because there are release conditions available that will reasonably assure his appearance

and compliance with judicial procedures. *See* 18 U.S.C. §§ 3142(c), (g). In determining whether there are conditions of release that will reasonably assure the defendant's appearance, courts must consider the factors enumerated under 18 U.S.C. § 3142(g), including the nature and circumstances of the offense charged, the weight of the evidence, the history and characteristics of the defendant, and the nature and seriousness of the danger that the defendant's release would pose. However, the BRA mandates that the Court only consider the § 3142(g) factors if it has first determined that Mr. Teixeira is currently a serious risk of flight or obstruction under § 3142(f)(2). *See Ploof*, 851 F.3d at 11.

    a. **Nature and Circumstances of the Offense.**

The nature and circumstances of Mr. Teixeira's arrest and charges demonstrate that any alleged risk of flight or obstruction can be sufficiently mitigated through a combination of release conditions. The alleged criminal acts described in the affidavit consist of Mr. Teixeira's removal of and posting of documents to a small private online community. There is no allegation in the affidavit that Mr. Teixeira had any intent for these documents to become widely available on the internet or desired to disrupt the geopolitical affairs of the United States. Thus, there is no reason to suggest that, if released, Mr. Teixeira has any motivation, desire, or current ability to commit any actions like those alleged in the complaint affidavit or in the government's supplemental motion for detention. Indeed, Mr. Teixeira no longer has access to any top-secret information,[6] and the Court can prohibit—as it does in cases where access to the internet is a concern—Mr. Teixeira from accessing any of the means (i.e. the internet) through with the leaks allegedly occurred, and may prohibit him from contacting any person with whom the documents were

---

[6] In fact, it appears that Mr. Teixeira's Air Force unit on Cape Cod has been stripped of its intelligence mission entirely. *See* https://www.bostonglobe.com/2023/04/18/metro/air-force-strips-unit-cape-cod-base-intelligence-mission-after-mass-guardsmen-charged-security-leak-scandal/.

allegedly shared. Indeed, nothing in the government's exhaustive searches of his parents' houses, his vehicle, nor its interviews to date, support its speculation that an undiscovered trove of documents exists.

Based on the foregoing, the nature and circumstances of the offense demonstrate that any risk of flight or obstruction are sufficiently outweighed by the potential release conditions discussed herein. For one, the circumstances of Mr. Teixeira's arrest demonstrate that he is committed to complying with judicial procedures without protest. Moreover, the stringent release conditions proposed exceedingly mitigate any risk of flight or obstruction that the nature of the charges may present. Indeed, the Court has both the ability and resources to ensure that Mr. Teixeira is unable to access both the means of, and individuals implicated in, the government's allegations. Accordingly, any risk of flight or obstruction raised by the circumstances of the offense are sufficiently outweighed by the available release conditions such that the Court may be reasonably assured of Mr. Teixeira's future appearance and compliance.

The government argues that the alleged seriousness of the offense warrants pretrial detention. However, the First Circuit has counseled that under the BRA, the seriousness of criminal allegations does not itself inform whether the circumstances of the offense justify pretrial detention. *See e.g. United States v. Edson*, 487 F.2d 370, 372 (1st Cir. 1973)(discouraging an instance where "[t]he seriousness of the crime … may have distracted the magistrate's attention from the priorities established by Congress by the Bail Reform Act"). Therefore, the alleged seriousness of Mr. Teixeira's alleged actions alone is irrelevant to whether there are sufficient release conditions that will reasonably assure Mr. Teixeira's appearance at trial and compliance with judicial procedures. The sole question before this Court is whether the available conditions are reasonably likely to assure Mr. Teixeira's appearance and compliance. Under the proper

standard, there is nothing in the nature or circumstances of the government's allegations that places the likelihood of Mr. Teixeira's presence and compliance into any legitimate doubt, particularly when considering the available release conditions.

However, if the Court finds that the seriousness of the allegations is relevant under this factor, it still weighs in favor of Mr. Teixeira's release. The circumstances before the Court foreclose any possibility that Mr. Teixeira will have access to, or the ability to disseminate, any top-secret information in the future. Law enforcement has conducted a thorough search of both his mother and father's residences and has seized every means through which Mr. Teixeira might access the internet. Additionally, Mr. Teixeira's original access to top-secret information has surely been terminated because of these allegations. Finally, the requirement that Mr. Teixeira have no access to any internet capable device ensures that he will have no future access to any of the means through which he allegedly shared any top-secret information. Thus, the circumstances presented still favor Mr. Teixeira's release because he has no present or future ability to commit any act akin to those alleged in the Complaint, if released under conditions.

Based on the foregoing, the nature and circumstances of the offense favor Mr. Teixeira's release because any imagined risk of flight or obstruction that could arise out of these circumstances are sufficiently mitigated by the stringent release conditions proposed herein.

    b. **Weight of the evidence.**

Mr. Teixeira further expects the government to focus the Court's consideration on its determination of the weight of the evidence. Courts have recognized that the weight of the evidence is the least significant detention factor because of its tension with the presumption of innocence. *See United States v. Motamedi*, 767 F.2d 1403, 1408 (9th Cir. 1985) (citing *United States v. Honeyman*, 470 F.2d 479, 472 (9th Cir. 1972). For reasons articulated elsewhere in this

memorandum, the stringent release conditions available are sufficient to ensure Mr. Teixeira's presence at trial and compliance with judicial procedures. Because of this, any determination regarding the weight of the evidence against Mr. Teixeira should be limited at this point. Mr. Teixeira is entitled to the presumption of innocence and that presumption should not be disturbed lightly.

Moreover, even if the Court finds this factor relevant, the factor still weighs in favor of Mr. Teixeira's release. The weight of the evidence alone does not inform whether a person will appear for court or comply with judicially imposed procedures, which are the only considerations relevant in a pretrial release determination. *See Edson*, 487 F.2d at 372 (holding that "[u]ntil a defendant has been convicted, the nature of the offense, as well as the evidence of guilt, is to be considered only in terms of the likelihood of his making himself unavailable for trial"). Accordingly, the purported weight of the evidence against Mr. Teixeira is irrelevant here because it does not inform whether he poses any risk of flight or obstruction.

   c. **History and characteristics of Mr. Teixeira.**

The Court may consider numerous aspects of Mr. Teixeira's characteristics under this factor, all of which support the conclusion that a combination of special release conditions will reasonably assure his presence and compliance. In particular, the BRA allows the court to consider Mr. Teixeira's "present character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history and record concerning appearance at court proceedings[.]" 18 U.S.C. § 3142(g)(3)(A).

As stated above, Mr. Teixeira is 21 years old, has no prior criminal history, modest financial resources, and is a lifelong resident of Massachusetts, as is his family. These extensive

12

community ties and lack of serious financial resources make it reasonably likely that the proposed release conditions will assure Mr. Teixeira's presence and compliance with court conditions. Indeed, this Court has previously held that substantial ties to the community, and a father serving as third-party custodian, were alone sufficient to reasonably assure a defendant's appearance in court. *See Say*, 233 F.Supp.2d at 226.

The government portrays Mr. Teixeira as a danger based first on a concern dating to his sophomore year in high school. Secondly, the government presents messages it contends were posted by Mr. Teixeira without any indication that he ever committed even a single act of violence. The high school incident was thoroughly investigated, and he was allowed to return to school within a handful of days, having completed a professional psychiatric evaluation. No similar incidents occurred during the remaining two years of his high school career. Additionally, the investigation was fully known and vetted by the Air National Guard prior to enlisting and also when he obtained his top-secret security clearance. The government has spoken to individuals that Mr. Teixeira regularly communicated with online, yet no one has indicated that Mr. Teixeira took any steps to commit any violent act. Any concerns arising out of the information provided by the government is sufficiently addressed by the release conditions proposed herein.

The Bail Report expresses uncertainty at the status of Mr. Teixeira's firearms and the Court may have interest in this question. Both law enforcement and Mr. Teixeira's family have taken steps to ensure that he will have no access to firearms upon his release. At the time of his arrest, Mr. Teixeira legally owned and stored firearms in a locked gun safe at his mother's residence in compliance with his Massachusetts license to carry.[7] Because the firearms were sufficiently

---

[7] The license to carry permits the purchase, possession, transportation, and carrying of all large and non-large capacity handguns, rifles, shotguns, and feeding devices, as well as ammunition. *See* Mass. Gen. Law. Ch. 140 § 131; *see also* https://www.mass.gov/info-details/gun-ownership-in-massachusetts#firearms-license-class-categories-.

secured as legally mandated, law enforcement agents were forced to utilize a drill to gain access to the safe. The agents removed and now maintain exclusive control over Mr. Teixeira's firearms. Since the completion of the Pretrial Services Report, Mr. Teixeira Sr. completed the process of removing his own firearms from his residence, which he too legally stored in a locked safe. The photo attached as government's Exhibit 19-6, displaying what appears to be firearms, are airsoft toys that are no longer in the residence. Moreover, no negative conclusions should be drawn from the legal ownership of firearms by Mr. Teixeira and his family. Responsible firearm ownership, consistent with the strict laws of the Commonwealth, is not uncommon in this part of Massachusetts.

### i. Available conditions.

Because the probation department suggests that Mr. Teixeira be released to Mr. Teixeira, Sr. as a third-party custodian, the Court should note his history and characteristics as well. Mr. Teixeira Sr. is well equipped to serve as third-party custodian for his son. Mr. Teixeira Sr. was born in Taunton and has no criminal history. He served for seventeen years as a Massachusetts Correctional Officer at the Bridgewater Correctional Center. After sustaining a work-related injury in approximately 2004, he began working full-time in the horticulture industry, doing wholesale distribution. He has held this position for nineteen years. This work allows Mr. Teixeira Sr. to work from home when permitted and ensures that he will be a constant and supportive presence for his son while on release. Of course, Mr. Teixeira Sr. has already served as a custodian for Mr. Teixeira during his childhood and is certainly capable of doing so again. He is aware of the nature of this case and the allegations and is unequivocally committed to his son's compliance with conditions and reporting any non-compliance. The Bail Report notes that the probation office explained to Mr. Teixeira, Sr. the duties and responsibilities of a third-party custodian. Mr.

Teixeira proffers that his father will be available to the Court for inquiry during the detention hearing and he asks that the Court make any inquiry of him that it may deem appropriate.

Mr. Teixeira Sr.'s home in North Dighton is also specially equipped to serve as the location for Mr. Teixeira's residence. The home has three points of entry, each of which is monitored 24/7 by a Ring brand camera. (*See* Exhibit 4). Any movement at any door immediately alerts to Mr. Teixeira's Sr.'s cellphone and preserves an audio and visual record of that activity. Additionally, the interior of the home contains a separate camera that Mr. Teixeira Sr. installed during Mr. Teixeira's adolescence to ensure he was home after school. The camera previously allowed Mr. Teixeira Sr. to check in on Mr. Teixeira while Mr. Teixeira Sr. was at work. It can again ensure that Mr. Teixeira Sr. is able to check on his son while outside of the house himself. This permits Mr. Teixeira Sr. to exercise his duties and responsibilities as third-party custodian at all times. This, combined with any location monitoring ordered by this Court, renders Mr. Teixeira's home a uniquely suitable location for Mr. Teixeira's pretrial release because it ensures constant supervision of both his whereabouts and any visitors to the residence.

Another available condition that is particularly relevant here is the proposal that Mr. Teixeira be prohibited from having access to any internet capable device. This limitation will prevent Mr. Teixeira from accessing the means through which he allegedly shared documents. It will also prevent him from contacting any member of his former social media communities. Again, Mr. Teixeira Sr. is well equipped to ensure compliance with this special condition. Mr. Teixeira Sr. still possesses the same internet protocols he did when Mr. Teixeira was young, which include certain parental locks and controls. This allows Mr. Teixeira Sr. to monitor all internet activity in his home and to prohibit any device that he does not control from accessing the home's Wi-Fi. Mr. Teixeira Sr. is again willing to provide probation with access to monitor these parental controls.

15

Should the Court believe that financial security is warranted, Mr. Teixeira's mother and father have also agreed to post their separate homes as security for whatever reasonable bond amount that the Court might require. Should the Court instead prefer a bond secured by cash, they believe they could post $20,000. This security provides the Court with additional assurance that Mr. Teixeira and his parents will make every effort to ensure that Mr. Teixeira complies with every aspect of his pretrial release conditions.

Based on the foregoing, Mr. Teixeira's unique family ties and living situation make him an exceptional candidate for pretrial release because his family can effectively monitor Mr. Teixeira. This strong family support is more than sufficient to reasonably assure Mr. Teixeira's presence at trial and compliance with court rules.

### ii. Military status and involvement.

Mr. Teixeira's employment as an active-duty Airman is also a strong factor in favor of release. On April 17, 2023, defense counsel in the Department of the Air Force, Office of the Judge Advocate General, prepared a Notice of Representation of Mr. Teixeira regarding any actions by and through the Department of Defense or the Department of the Air Force. (Exhibit 5). JAG counsel alerted Mr. Teixeira's Chief Master Sergeant of their duties to Mr. Teixeira while he is under investigation. (*Id.*) These duties are significant. On information and belief, a specific Senior Master Sergeant is currently assigned to check on Mr. Teixeira. This individual is a member of the Air National Guard who is on active duty under Title 10 orders.

Under United States Air Force Guidelines, (Exhibit 2), uniformed Airmen under criminal investigation or charge are entitled to receive mandatory support from their superiors.[8] (Exhibit 2

---

[8] Exhibit 2 provides the mandatory Department of Air Force Instruction ("DAFI") for protocols to mitigate the risk of suicide among Airmen. Under the DAFI, an Airman's relevant supervisor must utilize the Unit Commander/First Sargant Checklist For Airmen Under Investigation or Involved in the Military/Civilian Criminal Justice/Legal Systems (Exhibit 3) if they are notified that an Airman is under investigation under the civilian justice system. "Checklist use

at pg. 36, § 5.3). Under these mandatory guidelines, an Air Force servicemember who is facing civilian charges must receive "regular reoccurring check ins" from supervisors "to determine coping strategies, social support, access/engagement with the Chaplain Corps and/or Mental Health, any thoughts of self-harm, and access to lethal means." (Exhibit 3, pg. 3). Supervisor check-ins must occur weekly, at a minimum, "until legal action is resolved." (Exhibit 3, pg. 4). Moreover, supervisors must help the servicemember "develop [an] activity plan[9] for off duty time" and regularly "discuss any safety/coping concerns and provide support." (Exhibit 3, pg. 4). Finally, supervisors are required to "[e]ncourage hope and acknowledge positive changes, behaviors, or contributions made by the [Airman] *regardless of current allegations or pending legal actions.*" (Exhibit 3, pg. 4) (emphasis added). It should be noted that the Senior Master Sergeant who will be in contact with Mr. Teixeira holds no loyalty to Mr. Teixeira. This superior would hold a role of neutrality similar to a probation officer. Thus, the Senior Master Sergeant is a government agent whose duty of loyalty will always be with the government and its mission.

Beyond the mandatory procedures triggered by this criminal proceeding, Mr. Teixeira's active-duty employment also allows the Air Force to exercise this extra layer of control and supervision over Mr. Teixeira during his pretrial release. Should the Court find that home confinement is unnecessarily restrictive, it would be expected that Mr. Teixeira would be obligated to continue to report for a duty assignment from his chain-of-command. Undersigned proffers that though conversations with Mr. Teixeira's JAG counsel, counsel has learned that the Air Force

---

is mandatory if a Commander or First Sergeant has Airman or Guardians under investigation under … under the civilian criminal justice system." (Exhibit 3, pg. 1).

[9] "An activity plan is a set of instructions with activities to structure time while away from work, school or other regularly scheduled activities. The activities plan may include a daily schedule planning out each day from activities of daily living, events, and coping strategies. The plan should include daily check-ins with peers, family, friends, or unit leadership. The plan must be re-evaluated on a regular basis and prior to any new leave requests/long weekends. The plan must also include regular check-ins." (Exhibit 3, pg. 6, ¶ 11).

personnel can escort Mr. Teixeira to and from work and supervise various aspects of his living situation. This means that Air Force personnel may enter and inspect Mr. Teixeira's living quarters—in this case, his father's home—to ensure they are suitable and comply with any court order. Air Force personnel are also required to develop an activity plan for Mr. Teixeira that can include "a daily schedule planning out each day from activities to daily living, events and coping strategies." (Exhibit 3, pg. 6, ¶ 11). Any duty assignment would be non-sensitive and reasonably expected to be in areas such as a chaplain's office, gymnasium, or other area where he would be under supervision by Air Force personnel.

Accordingly, Mr. Teixeira circumstances are unique in that the Air Force is mandated to supervise him during pretrial release in a manner that helps ensure that he appears for court and complies with any applicable judicial procedures. This, combined with Mr. Teixeira's other characteristics, demonstrate that the small risk of flight or obstruction posed are sufficiently addressed by the release conditions proposed herein.

### d. Nature and seriousness of the danger to any person or the community.

The government could not move for detention on the grounds that Mr. Teixeira is a danger to any person or the community under 18 U.S.C. § 3142(f)(2). Instead, its supplemental memorandum posits speculation to argue what they otherwise cannot in the first instance—that Mr. Teixeira is a danger to the community if released. After again reiterating its suspicion that release will result in evidence being destroyed and further disclosures (both negated by the government's timeline of events and the arrest and searches of April 13 and 14 (*see* Exhibit 1)), the government turns to a caricature of Mr. Teixeira as a violent gun owner. In asserting that Mr. Teixeira "had multiple weapons just feet from his bed", it ignores the blatant evidence demonstrating that those firearms were lawfully owned and properly stored and locked amidst his

belongings.

This argument also ignores the most important question: whether Mr. Teixeira would have any access to any firearm upon release. The answer is resoundingly no. His father's lawfully owned and properly stored firearms were removed from the proposed residence. Moreover, the proposed release conditions do not simply rely on Mr. Teixeira's promise—they instead provide responsible and meaningful oversight which tolerate nothing but strict compliance. Mr. Teixeira acknowledges that the information provided by the government would concern any court. Any speculated danger to any person or the community is sufficiently accounted for by the strict release conditions proposed.

## **Conclusion**

Based on the foregoing, the BRA mandates that Mr. Teixeira be released pretrial. As an initial matter, the government cannot demonstrate that Mr. Teixeira is currently a risk of flight or obstruction, let alone a risk that could be considered "serious." In the alternative, if the Court finds that such a serious risk does exist, Mr. Teixeira is still entitled to release because there are a set of conditions available that will reasonably assure his presence at trial and his compliance with court rules.

Respectfully submitted,
Jack Teixeira
by his attorneys

*/s/ Allen Franco*
Allen Franco
Research & Writing Attorney
Federal Public Defender Office
51 Sleeper Street, 5th Floor
Boston, MA 02210
Tel: 617-223-8061

*/s/ Brendan Kelley*
Brendan Kelley
Federal Public Defender Office
51 Sleeper Street, 5th Floor
Boston, MA 02210
617-223-8061

**Certificate of Service**

I, Allen Franco, hereby certify that this document was this day filed through the ECF system and will be sent electronically to the registered participants as identified on the Notice of Electronic Filing ("NEF").

Date: April 27, 2023                                */s/ Allen Franco*
                                                                    Allen Franco