UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____

UNITED STATES OF AMERICA,     )
                       )
        Plaintiff,     )
                       )
    v.               )  Criminal Action No.
                       )  1:23-cr-10159-IT-1
JACK DOUGLAS TEIXEIRA,     )
                       )
        Defendant.     )
                       )

_____


BEFORE THE HONORABLE INDIRA TALWANI, DISTRICT JUDGE


INITIAL PRETRIAL CONFERENCE


Monday, July 24, 2023
10:04 a.m.


John J. Moakley United States Courthouse
Courtroom No. 9
One Courthouse Way
Boston, Massachusetts

Robert W. Paschal, RMR, CRR
Official Court Reporter
rwp.reporter@gmail.com

**A P P E A R A N C E S**

On behalf of the Government:

     UNITED STATES ATTORNEY'S OFFICE
     BY:  NADINE PELLEGRINI
          JARED C. DOLAN
          JASON A. CASEY
     One Courthouse Way
     Suite 9200
     Boston, MA  02210
     (617) 748-3261
     nadine.pellegrini@usdoj.gov
     jared.dolan@usdoj.gov
     jason.casey2@usdoj.gov


     UNITED STATES DEPARTMENT OF JUSTICE
     BY:  CHRISTINA A. CLARK
     950 Pennsylvania Avenue NW
     Washington, DC  20530
     (202) 307-5191
     christina.clark3@usdoj.gov


On behalf of the Defendant:

     LAW OFFICE OF MICHAEL K. BACHRACH
     BY:  MICHAEL K. BACHRACH
     224 West 30th Street
     Suite 302
     New York, NY  10001
     (212) 929-0592
     michael@mbachlaw.com


     FEDERAL PUBLIC DEFENDER OFFICE
     BY:  BRENDAN O. KELLEY
          GENE ALLEN FRANCO
     51 Sleeper Street
     5th Floor
     Boston, MA  02210
     (617) 223-8061
     brendan_kelley@fd.org
     allen_franco@fd.org

```
 1                     P R O C E E D I N G S
 2              (In open court at 10:04 a.m.)
 3              THE DEPUTY CLERK:  United States District Court is
 4     now in session, the Honorable Judge Indira Talwani presiding.
 5              This is Case Number 23-cr-10159, United States v.
 6     Jack Douglas Teixeira.  Will counsel please identify
 7     themselves for the record.
 8              MS. PELLEGRINI:  Good morning, Your Honor.  Nadine
 9     Pellegrini for the United States.
10              THE COURT:  Good morning.
11              MR. DOLAN:  Good morning, Your Honor.  Jared Dolan
12     on behalf of the United States.
13              THE COURT:  Good morning.
14              MS. CLARK:  Good morning, Your Honor.  Christina
15     Clark with the Department of Justice on behalf of the
16     United States.
17              THE COURT:  Good morning.
18              MR. CASEY:  And Jason Casey for the United States.
19     Good morning.
20              THE COURT:  Good morning.
21              MR. BACHRACH:  Good morning, Your Honor.  Michael
22     Bachrach for the defendant, Jack Teixeira.
23              THE COURT:  Good morning.
24              MR. KELLEY:  Good morning, Your Honor.  Brendan
25     Kelley for Mr. Teixeira.
```

```
1                    THE COURT:  Good morning.
2                    MR. FRANCO:  Good morning, Your Honor.  Allen
3       Franco for Mr. Teixeira.
4                    THE COURT:  Good morning.
5                    And Mr. Teixeira has waived his appearance for
6       today?
7                    MR. KELLEY:  That's correct, Your Honor.
8                    THE COURT:  So welcome to my session.
9                    I have -- we're here on the government's motion for
10      a pretrial conference.  And I think there are a few things
11      that are already in place, and I will look to you for the
12      other pieces you think we need to address today.
13                   The one is that we do have -- the protective order
14      pertaining to classified information has been issued, but the
15      memorandum of understanding regarding receipt of classified
16      information needs to be signed by the defense counsel and the
17      defendant, correct?
18                   MR. BACHRACH:  Yes, Your Honor.  I will be signing
19      that as soon as I meet with Mr. Rucker later today.
20                   THE COURT:  Okay.  And other counsel as well, and
21      we need to get Mr. Teixeira's signature on it.
22                   MR. BACHRACH:  Yes, and they'll be signing it once
23      they've been cleared to receive the information, Your Honor.
24                   THE COURT:  And I believe the initial scheduling
25      order for nonclassified discovery has issued, and that's
```

1    proceeding apace, correct?

2           MS. CLARK:  Yes, Your Honor.  The government has

3    produced its initial discovery to the defense.

4           THE COURT:  Okay.

5           MR. BACHRACH:  That's correct, Your Honor, and

6    we're reviewing it now.

7           THE COURT:  Okay.  So -- and I will continue to

8    have Magistrate Judge Hennessy handle all of the

9    nonclassified matters; and, frankly, for -- if you're

10   wondering where you should start, it's not a bad idea to

11   start there.  You might get his eyes on things faster than

12   with me.

13          So with that, I think I'm going to turn to the

14   government with regard to what other matters we are ready to

15   address today prior to security clearances being completed.

16          MS. CLARK:  Yes, Your Honor.

17          I would be happy to address any matters that the

18   Court would like me to address in an open session with

19   respect to classified information.  I thought it might be

20   helpful to start with an overview of where we are and kind of

21   a brief summary of where we see this going as it pertains to

22   classified information.

23          As Mr. Bachrach alluded to, he is currently the

24   only cleared attorney for Mr. Teixeira at this time.  It's

25   our understanding that the paperwork for interim clearances

1    for Mr. Kelley and Mr. Franco have been submitted and that

2    that is in process.  I would note that even once they receive

3    an interim clearance, there are certain types of information

4    that they would likely not be able to view until they are

5    fully cleared.

6            Mr. Rucker likely has a greater sense of timing on

7    the clearance process.  We provided Mr. Bachrach with some

8    initial viewing of classified information on August 10th in

9    lieu of the conference.  That information will be fully

10   produced to him today as well as a significant amount of

11   other classified information.

12           Beyond that, the government is in the process of

13   identifying and reviewing classified information held by a

14   number of other government agencies.  That process takes

15   time, both for them to identify the information in response

16   to the government's request.  It takes time for the

17   government to review that information.

18           And the process in terms of coordinating, once the

19   government determines that certain information is

20   discoverable, also takes time to determine, first, what can

21   be turned over wholesale to the defense; and, second, whether

22   any of that information needs to be introduced through CIPA,

23   Section 4, which as you're aware is an in camera, ex parte

24   procedure where the government would request the authority to

25   either delete information from classified discovery that is

1    not relevant and helpful to the defense or to summarize

2    certain information or to even substitute information in lieu

3    of providing the classified information in its entirety.

4         Should the case proceed towards trial, we

5    anticipate the defense may seek to use Section 5 of CIPA to

6    notice any information that they would like to use, and then

7    of course there would be evidentiary hearings pursuant to

8    Section 6(a) to determine the use, relevance, and

9    admissibility of information and then, to the extent any

10   information is used at trial, Section 6(c) to determine the

11   format that that information would take.

12        So all of that is to say that the government is

13   working as expeditiously as possible to get to the defense

14   the information that we believe is discoverable and that we

15   are required to turn over.

16        But we have discussed with the defense in terms of

17   setting a further schedule.  And in light of the clearance

18   issue and the fact that the government is still reviewing

19   information, we think it's premature to set a full CIPA

20   briefing schedule at this time and would request a status

21   conference in either 60 or 90 days to assess where we are and

22   whether it makes sense to set the full CIPA briefing schedule

23   at that time.

24        THE COURT:  Okay.  Let me take apart -- go through

25   a few things there.

1          With regard to your ex parte request that you may

2     be making, is there any reason that you know of at this time

3     that you would not be able to give the defense notice, not of

4     the substance of it, but of the fact that you are making a

5     request?

6          And the reason I am asking that question is I've

7     already received from Mr. Bachrach his letter of -- you know,

8     I'm -- "If this comes, I want you to make sure you know all

9     of this," which means they're obviously awaiting and not

10    knowing in the dark as to how that process is going.  And it

11    would seem it would at least help everyone know we're on the

12    same page timing-wise as to what's happening.

13         So, for example, if you're -- if you don't see a

14    problem with giving notice and no notice has been given, then

15    Mr. Bachrach can assume that what's happening is everything

16    is still working through on your end as opposed to having

17    been filed with me.

18         MS. CLARK:  Your Honor, we don't see any reason why

19    we would not give notice that we are filing an in camera

20    ex parte Section 4 motion.  This is, typically, when -- you

21    might not file notice if it's not clear that classified

22    information is involved in the case, and I think in this case

23    it's quite clear that there's classified information

24    involved.

25         THE COURT:  Okay.  So we'll have that notice from

1    you in the event that -- if and when we get there.  In the

2    meantime, you're anticipating continuing working through your

3    obligations.

4           What's defense's view of 60 days for a status

5    conference to put -- then put a schedule in place?

6           MR. BACHRACH:  I would say, Your Honor, 60 days for

7    a status conference to check in where we are.  I wouldn't say

8    that we should lock in at this moment that in 60 days we

9    will, in fact, be setting a schedule, since it's, I think, at

10   this point too early to say.  There's just too many variables

11   at this point, Your Honor.

12          But I think, certainly, it's very good and it's

13   always my practice to try to come back in a regular amount

14   with the Court to be able to give you a progress as to where

15   both sides are so that we can then decide at that point,

16   "Okay.  Are we ready, or do we need to do another

17   adjournment?"

18          THE COURT:  Okay.  So let's find something 60 days

19   from now.

20          THE DEPUTY CLERK:  Yes, Your Honor.  I have

21   September 22nd at 2:30.

22          THE COURT:  And since there's counsel flying in,

23   I -- it doesn't matter that much to me, unless I'm on trial,

24   whether I'm doing them in the afternoon or -- is it fair to

25   assume an afternoon hearing is more convenient?  Not

1    necessarily?

2            MS. CLARK:  I can make either work, Your Honor.

3            MR. BACHRACH:  Either is fine with me, although

4    it's certainly less expensive to the court when I don't have

5    to take a hotel.

6            THE COURT:  So we'll go with the 2:30 on

7    September 22nd.

8            If as you are approaching that date it does

9    appear -- or before a subsequent status conference it does

10   appear that you are able to have more of the shape of where

11   this case will go and deadlines we need to put in, I would

12   encourage you to confer and see if there is a joint proposed

13   schedule that you are -- would like me to consider.

14           MR. BACHRACH:  Your Honor?

15           THE COURT:  Yes.

16           MR. BACHRACH:  Just, on that, I think it's fair to

17   anticipate that we are going to need a lengthy period to

18   review the material in question.

19           Without divulging anything, I just think it will

20   be -- my understanding is it will be complicated from a

21   technical perspective to review things as quickly as we might

22   otherwise hope but that it's something we're going to hope to

23   resolve.  But it does seem like it's not -- it's not

24   something I can review in one day, for example.

25           THE COURT:  So I think my desire is to move things

1    as promptly as we can without impairing the defendant's

2    rights here.  And so I certainly have no interest in giving

3    an open-ended "We'll take the time it takes."  I anticipate

4    everyone trying to move swiftly.  This isn't the rocket

5    docket.  We will -- we will try to move promptly.

6          And I don't typically set trial dates at the

7    outset.  And I think the practice in general in this district

8    is, while the case is with the magistrate judges, unless it's

9    an exceptional case, we tend not to set a trial date.

10          At the point when it appears that it would be

11    useful to put something on the calendar, I'm happy to do it.

12    And whether that's when you're talking to me in a status

13    conference or talking to the magistrate judge in status

14    conference, either way, we can go ahead and do that.  But

15    otherwise, at this point, we're looking at 60 days right now

16    and see where we are.

17          Obviously, things will -- how quickly everyone gets

18    security clearance will make a difference; although, at this

19    point, you do, and so there is some ability to start

20    proceeding once the government is ready to keep moving with

21    what they have.

22          MR. BACHRACH:  Thank you.  I appreciate that,

23    Your Honor -- I think we're on the same page -- very much.

24          THE COURT:  And I understand from Mr. Rucker that

25    we will be able to make arrangements here in the courthouse

1     for Mr. Teixeira to be able to view the information here once

2     we get there.  I think we'll need to work out details with

3     the marshals and so forth, but I think that's all being put

4     in place as well.

5               MR. BACHRACH:  Yeah, that's my understanding as

6     well, Your Honor.  It's not -- it can't be done today, but my

7     understanding is it's something that Mr. Rucker is working

8     towards and certainly would be resolved well before the next

9     status conference.

10              THE COURT:  What other matters do we need to

11    address today?

12              MS. CLARK:  Nothing else from the government,

13    Your Honor.

14              MR. KELLEY:  Judge --

15              MR. BACHRACH:  Wait one second.

16              Sorry, Your Honor.  I think Your Honor has been

17    very clear, but I just wanted to make it abundantly clear,

18    because the government and the defense have a different

19    reading of Your Honor's last order with respect to the

20    application I put in with respect to who in the first

21    instance should receive CIPA Section 4 or any other section

22    of CIPA notice or -- and who should be the judge that should

23    be deciding in the first instance whether or not the full

24    amount of discovery should be withheld from the defense or

25    only a summary should be substituted or whether or not it, in

1    fact, should be provided.

2         Obviously, we've already put in our position that

3    we believe for non-CIPA matters, nonclassified matters, it

4    should go before Judge Hennessy, but for classified matters,

5    it should go before Your Honor.  I believe that's what

6    Your Honor said, also, when you -- the issue was moot.

7         THE COURT:  No.  I didn't say that the dividing

8    line is classified or nonclassified.  I suggested or tried to

9    make clear that the dividing line is dispositive or

10   potentially dispositive versus nonpotentially dispositive.

11        And I will give you as an example -- the protective

12   order that you submitted had my signature line on it.  I

13   don't see any reason that protective order couldn't be signed

14   by the magistrate judge.  And so the fact that you're using

15   the word "CIPA" doesn't mean you come to me.  The question

16   is, are you asking for a decision on something that goes to a

17   dispositive issue or a potentially dispositive issue?

18        So what happens in this district -- nobody needs

19   special orders, and I realize that part of it ends up being

20   kind of the secret code of a courthouse.  But a motion to

21   suppress gets filed; it doesn't go to the magistrate judge in

22   this courthouse.  It goes -- I think, maybe Judge Young has

23   made separate rulings on that.

24        But other than that, I think for every other judge,

25   a motion to suppress, a motion to dismiss, those get filed.

```
 1     I don't think the lawyers worry about where it gets filed.
 2     It's just filed on the docket.
 3            If a district judge wanted a magistrate judge in
 4     that case to give a report and recommendation, they could
 5     always refer it.  I don't know that that happens.  It
 6     doesn't -- I guess it happens in some sessions.  It doesn't
 7     happen in my session.
 8            But at any rate, there would need to be -- the
 9     referral that is in place in -- as a matter of practice in
10     this courthouse, is a referral for nondispositive matters.
11            MR. BACHRACH:  Okay.  Well, then, that answers the
12     question, as it's, obviously, defense's position that a
13     question of whether or not evidence should be disclosed to
14     the defense would be a dispositive issue, not a
15     nondispositive issue.
16            Obviously, if Your Honor then puts in a referral
17     order, receives a Section CIPA 4 notice and puts in a
18     referral order, then we would know that Your Honor took a
19     different position, but --
20            THE COURT:  So I don't think I've ever referred a
21     motion -- a motion to suppress, a motion to dismiss, anything
22     that's arguably dispositive, in my session, is in front of
23     me.  But that doesn't mean that there aren't parts of how
24     this happens --
25            If you're going to have a scheduling dispute about
```

1     something and not a substance dispute, I really -- I would

2     like to give full attention to the things you need me to give

3     full attention to, and I really appreciate that the

4     magistrate judges actually have far more experience than I do

5     in just moving things and getting people to talk to each

6     other and making sure that the discovery is happening.  I

7     really -- I do not want to have you say the word "CIPA" is

8     here; therefore, it's in front of the DJ.

9          But you can just go ahead and file things.  You

10    don't need to worry about that.

11         MR. BACHRACH:  Your Honor --

12         THE COURT:  You file it, they file it, and between

13    Magistrate Judge Hennessy and I, I will -- one of us will

14    rule on it, and you will know which one of us is ruling on

15    it.

16         MR. BACHRACH:  Your Honor, thank you.  That is a

17    procedure that makes perfect sense to me, and I appreciate

18    you clarifying it.

19         With respect to the protective order, that was a

20    jointly drafted -- the government filed it.  It was jointed

21    drafted between the two.  And, obviously, the defense had no

22    objection because that -- agreed, a protective order is

23    certainly something that a magistrate can handled, as would

24    be scheduling.  So I think I understand.  I think the

25    government understands, and we appreciate the clarification.

1          Thank you, Your Honor.

2          THE COURT:  And, you know, we do -- our chambers

3     are able to communicate.  So if you have a status -- if you

4     are appearing in front of Magistrate Judge Hennessy for

5     something and you need something from my session, such as

6     when's there a hearing date available or so forth, they will

7     reach out.  We will have that.  You don't need to feel like

8     you're going to only -- that you're somehow getting put in

9     the back of the line.  We're trying to move things more not

10    less expeditiously this way.

11         MR. BACHRACH:  Thank you, Your Honor.  I appreciate

12    that.

13         THE COURT:  Anything else?

14         MR. KELLEY:  Judge, we did file with the Court last

15    week a motion to reconsider Judge Hennessy's -- or an appeal

16    of Judge Hennessy's detention decision, and I didn't know

17    whether the Court was anticipating briefing from the

18    government, anticipating setting a hearing on that motion.

19         THE COURT:  So I had a preliminary matter before I

20    ask the government for their position on whether they want

21    briefing or not.

22         But you had a request for an oversized brief.  The

23    reason for your oversized brief that was provided to me, or

24    that I understood from the motion, was it had already taken

25    you 20 pages to lay out the issues in the first case, and now

1    we're appealing it, so you need a little bit more.  So I gave

2    you 25 pages.

3            The first line of your appeal says, "For all of the

4    background and everything else, go back and look at our

5    20-page memo," which to me means you've just taken a 45-page

6    brief because you want me to read both.  That's not what you

7    asked me for.

8            So right now, I'm prepared to read the brief that

9    you've given me.  Obviously, I have looked at the brief

10   you've given me.  If you're wanting me to read your prior

11   briefs, I'm not intending to do that.  And so if you would

12   like to refile your brief, including some more material,

13   you're welcome to do it.  And if you can't do that in

14   25 pages, you can ask for a specific page number.  You asked

15   for an oversized brief without -- without a page number.

16           So let me know how you want to proceed, and then I

17   will ask the government how they want to respond.

18           MR. KELLEY:  I think, Judge, we can resubmit a

19   brief with a specific page limit identified.  Obviously, it

20   was in excess of the 25 pages when we were initially drafting

21   that, and so we're happy to resubmit that.  I think that can

22   be done within a day or two.

23           THE COURT:  Okay.  So why don't you resubmit that.

24   Then we'll get your brief on file.

25           And then I assume the government wants to respond?

1          MS. PELLEGRINI:  The government does wish to
2     respond, Your Honor.
3          THE COURT:  And how much time do you need to
4     respond?
5          MS. PELLEGRINI:  Originally, I was going under the
6     14 days allowed by local rule, so I was planning for this
7     coming -- a week from today.  I would like an opportunity to
8     see the refiled brief and may ask for an additional few days
9     depending on the date of their filing.
10         THE COURT:  So if whenever you file it, can you
11    file it ten days after that?
12         MS. PELLEGRINI:  Yes, Your Honor.
13         THE COURT:  Okay.  And I think you gave me a
14    supplemental filing, which was something that had come to
15    your attention afterward, and that's fine.  I'll look at it.
16         It makes my life much easier if, before things are
17    filed, there's a conversation with each other.  The local
18    rule says nothing more should be filed without leave of court
19    after the initial and opposition.  Obviously, this was
20    something that needed to get filed.  It just makes my life
21    easier if the way you present it is not just to file it, but
22    you have a -- you know, whatever it is -- notice of
23    additional thing or an assented-to request for leave to file
24    this additional material.
25         If you had filed the additional material the day

1    the government's opposition was due, they would have been

2    pretty unhappy.  So by having that, you allow me to make sure

3    you've worked out the timing or worked out what you need to

4    do, and I get it filed.  So you file that.

5          I will generally, a jointly -- not always.  I

6    didn't sign your protective order, but I will generally get

7    to something that's jointly filed very quickly.  And I will

8    generally wait the two weeks for an opposition if something

9    is not -- if you haven't alerted me to the other side's

10   position.

11         So that's Local Rule 7.1 that requires a

12   certificate and 7.1 -- I don't know the number -- that says

13   you can't file something supplemental without leave of court.

14   So --

15         MR. KELLEY:  Thank you, Your Honor.

16         THE COURT:  What's there now is fine.  You've got

17   your exhibits and you've got your -- that additional thing.

18         The other thing I go through in my standing orders,

19   which is a little bit tedious probably, but if you

20   identify -- if you, in your brief, use the citation form I

21   recommend, it links in CM/ECF; and I can read that, link on

22   it, read the thing you're citing, and jump back and forth

23   with ease.  So when you file your memorandum, if you -- I

24   don't know if you did or not.  I didn't actually pay

25   attention to that.

1          MR. KELLEY:  I think we struggled with the way that

2     we filed it in PACER to be able to do that, but I think we're

3     able to work that through the clerk.

4          THE COURT:  So that's just -- will help me.

5          Anything else we need to address today?

6          MS. CLARK:  Nothing from the government,

7     Your Honor.

8          MR. BACHRACH:  No, Your Honor.  Thank you.

9          THE COURT:  Okay.  Then, we are in recess.  Thank

10    you.

11          (Court in recess at 10:27 a.m.)

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**CERTIFICATE OF OFFICIAL REPORTER**

I, Robert W. Paschal, Registered Merit Reporter and Certified Realtime Reporter, in and for the United States District Court for the District of Massachusetts, do hereby certify that pursuant to Section 753, Title 28, United States Code, the foregoing pages are a true and correct transcript of the stenographically reported proceedings held in the above-entitled matter and that the transcript page format is in conformance with the regulations of the Judicial Conference of the United States.

Dated this 10th day of August, 2023.

/s/ Robert W. Paschal
_____

ROBERT W. PASCHAL, RMR, CRR
Official Court Reporter