UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | * | |
| | * | |
| v. | * | Criminal Action No. 1:23-cr-10159-IT |
| | * | |
| JACK DOUGLAS TEIXEIRA, | * | |
| | * | |
| Defendant. | * | |

MEMORANDUM & ORDER

September 1, 2023

TALWANI, D.J.

Defendant Jack Teixeira is charged with willfully retaining and transmitting classified national security information that he obtained through the top secret security clearance he received as a member of the Air National Guard. Following Teixeira's arrest, the government moved for detention pursuant to 18 U.S.C. §§ 3142(f)(2)(a) and (b) of the Bail Reform Act. The Magistrate Judge held a hearing and issued a Memorandum and Order on Detention [Doc. No. 37] granting the government's request. Teixeira now seeks revocation of the detention order under 18 U.S.C. § 3145(b). Appeal of Magistrate Judge Decision ("Appeal") [Doc. No. 77]. For the following reasons, Teixeira's request to vacate the detention order is DENIED.

I.   Background[1]

A. *Overview*

Teixeira is 21 years old and is a lifelong resident of North Dighton, Massachusetts. Def.'s Mem. 1 [Doc. No. 83]. His parents are divorced, and both still live in North Dighton. Id. From

---

[1] The court relies for this background on Teixeira's Memorandum of Law in Support of Appeal of Magistrate Judge's Order on Detention ("Def.'s Mem.") [Doc. No. 83] and Reply Memorandum in Support of Appeal of Magistrate Judge's Order on Detention [Doc. No. 94], the exhibits submitted by both sides before this court and the Magistrate Judge [Doc. Nos. 19-1–11; 20-1–4; 77-1–2; 86-1–4], the transcript of the testimony and Teixeira's argument at the detention

2017 until his arrest, Teixeira resided with his mother and stepfather except when he was stationed out of state. Id.

In 2019, when he was 17 and in his senior year of high school, Teixeira enlisted as a member of the Massachusetts Air National Guard. Id. After basic training at Lackland Air Force Base in Texas, Teixeira attended specialized information technology and cybersecurity courses at Kessler Air Force Base in Mississippi. Government's Supp. Mot. in Support of Pretrial Detention ("Supp. Mot. for Det."), Ex. K [Doc. No. 19-10]. Teixeira completed his basic training in 2020. Def.'s Mem. 2 [Doc. No. 37].

In 2021, Teixeira was granted Top Secret and Sensitive Compartmented Information security clearance. Criminal Complaint Affidavit ¶ 24 [Doc. No. 3-1]. At the time of his arrest, he was on active duty as an Airman First Class, classified as a Cyber Defense Operations Journeyman in the United States Air Force, 102nd Intelligence Wing of the Massachusetts National Guard, stationed at Otis Air National Guard Based on Cape Cod. Def.'s Mem. 1-2 [Doc. No. 83].

B.  *Proffered Evidence Relating to the Charged Offense*

As part of the process to obtain his security clearance, Teixeira signed numerous non-disclosure and other agreements stating that he understood the nature of the information now accessible to him, that he would not improperly store or share that information, that he understood the potential risks posed to the United States by the disclosure of that information, and that he agreed to accept these obligations. Supp. Mot. for Det., Ex. A (Sensitive Compartmented Information Nondisclosure Agreement) [Doc. No. 19-1]; id., Ex. B (102d

---

hearing, and the Affidavit in Support of an Application for a Criminal Complaint and Arrest Warrant ("Criminal Complaint Affidavit") [Doc. No. 3-1].

Intelligence Wing Information Technology User Agreement) [Doc. No. 19-2]; id., Ex. C (General Information Systems Acceptable Use Policy and User Agreement) [Doc. No. 19-3].

According to Certificates awarded to him, Teixeira completed training in March 2022 and March 2023 regarding Unauthorized Disclosure of Classified Information and Controlled Unclassified Information. Government's [Second] Supp. Mot. in Support of Pretrial Detention, Ex. C (Certificates of Completion) [Doc. No. 34-5].

According to Department of Air Force memoranda from September 2022, October 2022, and February 2023, Teixeira was cautioned not to "deep dive" into classified information, not to view content unrelated to his primary duty, and not to take notes of any form on classified information, or documents containing classified national defense information, outside of the scope of his duties. Id., Ex. B-1 [Doc. No. 34-2]; id., Ex. B-2 [Doc. No. 34-3]; id., Ex. B-3 [Doc. No. 34-4].

Despite these directives, a government audit reports that Teixeira conducted hundreds of searches on a U.S. government agency's classified network between February 26, 2022, and April 17, 2023, and that through these searches, Teixeira accessed hundreds of documents and classified reports. Decl. of Luke Church, Special Agent, FBI, Ex. D ¶¶ 6-9 [Doc. No. 19-4]. Special Agent Church reports that Teixeira searched a number of subjects, many of which were related to the conflict between Russia and Ukraine. Id. at ¶ 7.

The government contends that records obtained from a social media platform show that Teixeira disclosed government information on at least three separate servers, including one that had at least 150 unique users, some of whom represented that they lived in foreign countries, and some of whom used foreign IP addresses to log on to the social media platform. See Decl. of Luke Church, Special Agent, FBI, Ex. 3 ¶ 4 [Doc. No. 86-3]. According to Special Agent Patrick

Lueckenhoff, Teixeira initially posted summaries of the information in the documents he accessed and eventually shared photographs of the documents themselves. Criminal Complaint Affidavit ¶¶ 16-18 [Doc. No. 3-1].

Special Agent Church reports further that Teixeira engaged in direct message (DM) conversations with various users, some of whom the government believes to be foreign nationals, about the information he obtained and that between November 1, 2022, and April 7, 2023, Teixeira sent 40,000 messages on the social media platform, including exchanges with other users where he acknowledged that the information he was sharing was classified. Decl. of Luke Church, Ex. I ¶ 4 [Doc. No. 19-8]. For example, on one occasion he shared information about refugees from the Russia-Ukraine conflict entering a certain country with a user he knew to be from that country. Id. He also offered users information that went beyond what he was already sharing, posting in one instance: "if you guys do [] want happenings that pertain to your country or events or politics or whatever you can DM me and I can tell you what I have[.]" Id.

The government reports that in a November 2022 message on the social media platform, when asked by another user if the information he was posting was classified, Teixeira bragged about how he had "plausible deniability" about posting classified material. Id. The government contends moreover that Teixeira brazenly ignored his nondisclosure obligations, posting, at one point, "I'm breaking a ton of U[nauthorized] D[isclosure] regs . . . Idgaf what they say I can or can't share." Decl. of Luke Church, Ex. A ¶ 5 [Doc. No. 34-1].

On April 13, 2023, a reporter visited Teixeira's mother's house and suggested that Teixeira had leaked classified information. Transcript of Detention Hearing 36:2-7 [Doc. No. 24]. Teixeira's mother requested that Teixeira return home, and he obliged. Id. at 36:4-14. Later

that day, when officers arrived at his home, Teixeira was waiting on the front porch and submitted to arrest without incident. Id.; Appeal, Ex. 1 (arrest photos) [Doc. No. 77-1].

C. *Proffered Evidence Relating to Obstruction of Justice*

On April 6, 2023, another user advised Teixeira that some of his postings may have been "passed along." Decl. of Luke Church, Ex. I ¶ 4 [Doc. No. 19-8]. The government contends that upon receiving that information, Teixeira took steps to conceal his role in sharing the information. He reportedly asked users on the social media platform to delete his messages and posts, and to not tell anyone anything about him. Id. The government contends that the same day, Teixeira used government computers to search classified intelligence reporting for the word "leak." Criminal Complaint Affidavit ¶ 27 [Doc. No. 3-1]. Following his arrest, the government located an iPad and other electronic items known to belong to Teixeira in a dumpster, but was unable to recover data because the iPad's memory chip was damaged. Decl. of Luke Church, Ex. 3 ¶ 9 [Doc. No. 86-3]; see also Ex. J (photos of devices) [Doc. No. 19-9]. Along with those devices, the government also discovered the remnants of a computer tower, but did not find any internal data-storing electronic components, such as a hard drive. Id. ¶ 10. Teixeira also apparently disposed of his cell phone, telling a fellow Airman on his last shift before his arrest that his old phone flew out of the window of his car and was run over by a semi-truck. Decl. of Luke Church, Ex. D ¶ 11 [Doc. No. 19-4].

The government reports that neither the data storage components of the computer—i.e., the hard drive—nor the hard-copy documents that Teixeira printed have been recovered.

D. *Proffered Evidence Relating to Teixeira's Other Activity and Statements*

In high school, Teixeira was suspended for remarks he made. Teixeira has dismissed the comments as innocent discussion of a video game, but as the Magistrate Judge noted, "witnesses

5

dispute Defendant's explanation and, as the sealed exhibit [Doc. 19-11] shows, go further." Mem. and Order on Detention 16 [Doc. No. 37].

In a letter written a year and a half later when seeking to obtain a Firearm ID, Teixeira reported that he was "very cognizant of the world around [him] and know[s] how powerful words can be." Supp. Mot. for Det., Ex. F (Teixeira November 2020 letter to Officer Ferreira) [Doc. 19-5]. He stated further that:

> I realized after the [high school] incident and of course understand now that what I say matters and to weigh my words, knowing now [how] the "ripple in the pond" effect works. . . . I now have the situational awareness and social disciplines I lacked in March of 2018 and am very aware of my surroundings when I speak.

Id. Teixeira explained further that "[w]ith wearing the uniform and being a representative/ambassador of the United States Air Force, and now having a Top Secret clearance," he understood that he "need[s] to watch what [he] say[s] and do[es] both in public and in private, as it affects more than just myself." Id.

The government reports that in November 2022, subsequent to writing this letter regarding the importance of words, Teixeira expressed support for a potential terrorist attack on the World Cup and stated that he wanted to "forcibly cull[] the weak minded" and that if he had his way, he'd "kill a fuck ton of people." Decl. of Luke Church, Ex. I ¶ 4 [Doc. No. 19-8]. In another set of messages in February 2023, Teixeira discussed refitting a car for use as an "assassination van," and using the van to shoot at targets in crowded urban and suburban environments without being detected or anticipated. Id.

Special Agent Church reports further that in July 2022, Teixeira searched the terms "Ruby Ridge," "Las Vegas shooting," "Mandalay Bay shooting," "Buffalo tops shooting," and "Uvalde." Decl. of Luke Church, Ex. D ¶ 8 [Doc. No. 19-4]. The government alleges that at the time of his arrest, Teixeira kept a gun locker near his bed, and that the gun locker contained not

6

only handguns and shotguns, but also a high-capacity weapon and a gas mask. Supp. Mot. for Det. 5 [Doc. No. 19]; Ex. G (photos of Teixeira's bedroom) [Doc. No. 19-6].

## II.     Standard of Review

The Bail Reform Act of 1984 authorizes a judicial officer to hold a detention hearing only upon a motion by the government for certain categories of offenses posing a danger to the community, 18 U.S.C. § 3142(f)(1), or upon the motion of the government or on the judicial officer's own motion where there is (A) a serious risk that the defendant will flee; or (B) a serious risk that the defendant will obstruct or attempt to obstruct justice, or threaten, injure, or intimidate, a prospective witness or juror. 18 U.S.C. § 3142(f)(2); United States v. Ploof, 851 F.2d 7, 10, 12 (1st Cir. 1988) (remanding case for district court "to clearly specify whether detention is based, on the one hand, on dangerousness to the community under subsection (f)(1) or, on the other, on witness intimidation or obstruction of justice under subsection (f)(2)(B)"); see United States v. Acevedo-Ramos, 755 F.2d 203, 206 (1st Cir. 2001) ("[W]here the court finds that a defendant's release creates an unusual risk of obstruction of justice, the Constitution and relevant statutes permit detention.").

Following a detention hearing, the judicial officer shall order the defendant detained pending trial only if the judicial officer determines that "no condition or combination of conditions will reasonably assure the appearance of the person as required and the safety of any other person and the community." 18 U.S.C. § 3142(e).

In determining whether any condition or combination of conditions of release will reasonably assure defendant's appearance as required and the safety of the community, the judicial officer must consider the following factors:

    (1)    the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591 [sex trafficking], a

> Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;
>
> (3) the history and characteristics of the person, including--
>
>   (A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and
>
>   (B) whether, at the time of the current offense or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and
>
> (4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release . . . .

Id. § 3142(g).[2]

Pursuant to 18 U.S.C. § 3145(b), where the judicial officer who orders the defendant detained is a magistrate judge, the district judge has jurisdiction to review the detention order. In doing so, the district judge must engage in *de novo* review of the contested order. United States v. Marquez, 113 F. Supp. 2d 125, 127 (D. Mass. 2000). The court may reject the magistrate judge's findings of fact and start the hearing anew or may accept some or all of the findings of fact made by the magistrate judge and hear additional facts and argument. Id.

---

[2] Teixeira contends that the weight of the evidence is the least significant factor. See Def.'s Mem. 17 [Doc. No. 83]. The Bail Reform Act does not specify the weight each factor should be given. See United States v. Zhang, 55 F.4th 141, 149 (2d Cir. 2022).

### III. Discussion

#### A. *The Government Was Entitled to a Detention Hearing under 18 U.S.C. § 3142(f)(2)(B)*

Teixeira contends that the government is not entitled to a detention hearing because the government has not proved by a preponderance of the evidence that Teixeira poses a serious risk of flight or obstruction of justice. Def.'s Mem 5 [Doc. No. 83]. The court disagrees.

According to Special Agent Church and as recounted above, Teixeira, upon learning that information he had posted had been reposted on a different server, took steps to obstruct the investigation into his role in the original posting. When the investigators located Teixeira's electronic devices, they had been destroyed or were missing their hard drives. The government also presented evidence that Teixeira replaced his cell phone shortly before his arrest; the cell phone he used previously has not been located. Teixeira further directed other online users not to cooperate with law enforcement if approached, to delete any messages between users and Teixeira, and to delete Teixeira's posts.

Teixeira does not offer contrary evidence, but argues that the government has not established "that [Teixeira] would engage in such behaviors moving forward, or that he has the ability to do so." Id. at 12. Additionally, Teixeira points out that many of the forums where he was active have been shut down, and that it is likely that any individual from these forums with relevant knowledge has already been contacted by law enforcement, so there is no longer a risk that Teixeira will engage in obstructive acts. Id.

The court is not persuaded that Teixeira's opportunities to obstruct justice have passed. As noted, certain of Teixeira's data storage devices—namely a possible computer hard drive—have not yet been found. Additionally, the government has not located the originals of any of the documents that Teixeira took from Otis Air Force Base. Gov. Opp'n 18 [Doc. No. 87]. And the

9

government has largely been unable to determine where Teixeira stored electronic copies of the documents he took and shared online. Id.

Given these circumstances and Teixeira's demonstrated willingness to destroy evidence that may implicate him, the court finds that the government has established by a preponderance of the evidence that Teixeira poses a serious risk of obstructing or attempting to obstruct justice and that a detention hearing was warranted.[3]

B. *Factors to be Considered for Release Conditions*

Next, the court must consider the factors set forth at 18 U.S.C. § 3142(g) in order to determine whether there are conditions of release that will reasonably assure the appearance of the person as required and the safety of any other person and the community. The court addresses each factor in turn.

    1.    Nature and Circumstances of the Offense

Teixeira is charged with six counts of unauthorized retention and transmission of national defense information in violation of 18 U.S.C. § 793(e). See Indictment [Doc. No. 48].[4] One

---

[3] Because a detention hearing was warranted based on obstruction of justice, the court need not separately address Teixeira's flight risk as a basis for a detention hearing.

[4] The Indictment charged willful retention and transmission of: "[i]nformation regarding the compromise by a foreign adversary of certain accounts belonging to a U.S. company"; "[i]nformation regarding the provision of equipment to Ukraine, how the equipment would be transferred, and how the equipment would be used upon receipt"; "[a] Government Document that describes the status of the Russia-Ukraine conflict to include troop movements on a particular date, which Government Document is based on sensitive U.S. intelligence gathered through classified sources and methods and reveals United States national defense information"; [a] Government Document discussing a plot by a foreign adversary to target United States forces abroad and which discusses, in part, where and how the attack on United States forces would occur"; "[a] Government Document that describes Western deliveries of supplies to the Ukrainian battlefield, including foreign perceptions of the deliveries"; "[a] Government Document that describes a shift in foreign and economic policy of a particular foreign government and actions that country took in an effort to repair its relationship with the United States, to the perceived detriment of a separate foreign country." Id. Counts One – Six.

element of this crime is that the defendant "had reason to believe that such information could be used to the injury of the United States or to the advantage of any foreign nation." United States v. Abu-Jihaad, 630 F.3d 102, 135 (2d Cir. 2010). Although the offenses at issue do not involve crimes enumerated at 18 U.S.C. § 3142(f)(1), given Teixeira's alleged willingness to disclose information that he had reason to believe could be used to harm the United States or be misused by foreign nations, the offenses are undoubtedly serious.

The specific circumstances are also of grave concern. Teixeira signed his name to agreements acknowledging that he understood the seriousness of his security clearance and the potential irreparable injury to the United States that unauthorized disclosure of classified materials could cause. Teixeira is alleged to have then used his training and position to access hundreds of classified documents, and to have shared those documents, through both summaries and photographs, with hundreds of users on a social media platform. Teixeira also allegedly solicited requests from other users on the platform, offering to share additional information he had pertaining to their countries and current events and politics.

The circumstances of the offense leave open the possibility of further harm because some of the classified information at issue has not yet been recovered. The government has not found any of the physical documents Teixeira allegedly printed, nor has it located the hard drive from Teixeira's home computer, or the digital copies of documents Teixeira may have stored electronically and then posted online. In the wrong hands, the information and documents that the government has not recovered could do great harm to the community by threatening national security. See U.S. v. Mallory, 268 F. Supp. 3d 854, 866 (E.D. Va. 2017) (finding that defendant charged with the "serious offense" of espionage was a danger to the community because his

disclosure of classified intelligence "pose[d] a grave risk of endangering not only one person, but the U.S. itself").

In sum, the charges are serious, and the offense involves ongoing potential harm to the community.

2. The Weight of the Evidence

To establish a violation of 18 U.S.C. § 793, the government must prove beyond a reasonable doubt that Teixeira "(1) lawfully had possession of, access to, control over, or was entrusted with information relating to the national defense; (2) had reason to believe that such information could be used to the injury of the United States or to the advantage of any foreign nation; (3) willfully communicated, delivered, transmitted, or caused to be communicated, delivered, or transmitted such information; and (4) did so to a person not entitled to receive it." Abu-Jihaad, 630 F.3d at 135.

The government has produced ample evidence that Teixeira violated section 793. It has offered the results of a government audit showing that Teixeira used his security clearance and position at Otis Air Force Base to conduct unauthorized searches of classified material, which he then accessed. It has produced forensic evidence linking Teixeira to the social media posts including classified information, including an affidavit from a user of the social media platform identifying Teixeira as the person posting classified documents. Further, the government has demonstrated that Teixeira had full knowledge that his actions were unlawful and in contravention of his training on security procedures. And, as the Magistrate Judge noted, Teixeira's own actions are inculpatory. Teixeira's decision to destroy and dispose of his electronics and his messages to other users of the social media platform requesting that they

delete evidence and not cooperate with authorities indicate that Teixeira was aware he had violated the law.

In sum, the government has provided substantial evidence that Teixeira possessed classified information and communicated that information to persons not entitled to it with knowledge that the information could cause injury to the United States.

### 3. Teixeira's History and Characteristics

Under this factor, the court considers Teixeira's "character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings[.]" 18 U.S.C. §3142(g)(3)(A).

Some aspects of Teixeira's history and characteristics weigh in favor of release. Teixeira is only 21 years old, has no prior criminal history or failure to appear at court appearances, has no documented history of substance abuse, and has lived the majority of his life in North Dighton. Teixeira also has supportive parents. His father has agreed to serve as a third-party custodian should Teixeira be released, and both parents have offered their respective homes as security for Teixeira's appearance in court. Additionally, Teixeira did not flee when he learned he was to be arrested and he submitted to arrest without incident. The court credits all of these facts.

However, the court cannot disregard other aspects of Teixeira's history and characteristics. Teixeira paints his interest in guns and other weaponry as a general interest or hobby, like stamp collecting or being a car enthusiast, but there is reason for concern here. As set forth above, the searches that Teixeira ran on the classified network included searches on

domestic mass shootings. And as noted above, his gun locker contained not only handguns and shotguns, but also a high-capacity weapon and a gas mask.

Further, Teixeira's own statements undermine his assertion that his interest in weapons is benign. When Teixeira spoke to other participants on his social media platform, he exhibited a chilling interest in violence and disregard for human life. In those messages, Teixeira expressed support for a potential terrorist attack on the World Cup and indicated that he wanted to "forcibly cull[] the weak minded." Decl. of Luke Church, Ex. I ¶ 4 [Doc. No. 19-8]. In another set of messages, Teixeira made plans to refit a car for use as an "assassination van," and discussed using the van to shoot at targets in crowded urban and suburban environments. Id.

The court recognizes that Teixeira has never acted on or been accused of acting on any of his threats of violence. Nonetheless, the court cannot ignore Teixeira's documented interest in mass shootings, his expressed desire for violence when communicating on social media, and his ability to carefully marshal his words when seeking to convince others to trust him.

Teixeira is also technologically savvy. As noted above, Teixeira has received military training in computer networks, systems, and cybersecurity, and his role in the Air National Guard is essentially as an information technology specialist. Moreover, Teixeira was the administrator of the server on the social media platform where he allegedly posted confidential information. Teixeira's history and characteristics indicate that he possesses the skills to circumvent any technological restrictions that release conditions might impose.

   4.   The Nature and Seriousness of the Danger to Teixeira's Community

Teixeira was fully aware that the information he shared on the social media platform was classified and not meant to be disclosed. He allegedly disclosed it anyway, without regard for the risk such information posed to the United States, to its citizens, to his fellow members of the

military, or to international persons who could be harmed by his disclosure of sensitive military information. Even without ongoing access to Otis Air Force base and classified networks, Teixeira may still possess this information—either from recall or in locations the government has not discovered—that could cause grave harm to the United States if revealed.

The court also cannot dismiss the government's evidence that Teixeira has a disquieting interest in mass violence. Teixeira's social media messages display both an affinity for violence and vitriol for certain classes of people. In some messages, Teixeira specifically detailed plans to outfit a van for use as a sniper vehicle and went so far as to envision potential targets.

### C. *No Combination of Release Conditions Can Reasonably Assure the Safety of the Community*

Given the above factors, the court finds that no set of release conditions will reasonably assure the safety of the community, or prevent destruction of evidence.

In United States v. Mallory, the Eastern District of Virginia considered whether to detain a defendant also accused of violating the Espionage Act. 268 F. Supp. 3d 854 (E.D. Va. 2017). In ordering detention, the court wrote:

> Defendants accused of espionage [] generally pose a special danger given those defendants often possess sensitive information related to national defense that if disclosed could not only cost the lives of individual agents, soldiers, officers and diplomats stationed abroad, but in a very real sense could cost the lives of American citizens here at home. In these circumstances, courts are not required to fashion conditions that would erect a virtual prison around the defendant.

Id. at 866 (citing United States v. Tortora, 922 F.2d 880, 887 (1st Cir. 1990)). Those concerns are applicable here.

While Defendant suggests that the court could limit Teixeira's access to the internet by court order, the court finds that in light of Teixeira's computer training and skills, and the ease with which the internet can be accessed, he would likely have the ability to obtain unmonitored access to the internet. And internet access leaves open the risk of further destruction of evidence.

Teixeira's statements regarding mass violence also leave open the risk that he could further disclose classified information without regard to the harm that may cause.

Moreover, based on the evidence the government has proffered that Teixeira has disregarded his solemn written commitments and been willing to state what is necessary to serve his own interests, the court does not have a basis to trust a commitment here to follow court orders. As the First Circuit has noted, the pretrial release system depends, in part, on a court's belief that defendants will keep their word. See Tortora, 922 F.2d at 887 (noting that the success of pretrial release conditions "depends largely on the defendant's good faith" and reversing district court's imposition of pretrial release conditions in favor of detention where "little about the defendant or his history suggests that good faith will be forthcoming").

In sum, the court finds that the government has established that Teixeira poses a risk of obstructing justice such that detention is warranted under 18 U.S.C. § 1342(f). The court further finds that no set of release conditions could reasonably assure the safety of the community under § 3142(e), given Teixeira's personal history and the nature of the information he may continue to possess. Accordingly, the court affirms the Magistrate Judge's determination that Teixeira should be detained pretrial.

IV. Conclusion

For the foregoing reasons, Teixeira's request that the court vacate the Magistrate Judge's Memorandum and Order on Detention [Doc. No. 37] is DENIED.

IT IS SO ORDERED

September 1, 2023                                                     /s/ Indira Talwani
                                                                      United States District Judge